NEWMAN, Circuit Judge,
dissenting.
This en banc court has split into two factions, neither of which resolves the issues of divided infringement. A scant majority of the court adopts a new theory of patent infringement, based on criminal law, whereby any entity that “advises, encourages, or otherwise induces,” maj. op. 1307, or “causes, urges, encourages, or aids the infringing conduct,” id. at 1308, is liable for the infringing conduct. The majority further holds that only the “inducer” is liable for divided infringement, and that the direct infringers are not liable although the patent rights are “plainly being violated by the actors’ joint conduct.” Id. at 1306. These are dramatic changes in the law of infringement.
On this new “inducement-only rule,” the inducing entity is liable on greatly enlarged grounds, such as merely advising or encouraging acts that may constitute direct infringement. This new rule is not in accordance with statute, precedent, and sound policy. It raises new issues unrecognized by the majority, and contains vast potential for abuse. In turn, the two cases here on appeal can readily be resolved under existing law, as the majority opinion almost acknowledges in its remand instructions. Maj. op. 1318-19.
In contrast, a significant minority of the en banc court continues to favor the “single-entity rule,” whereby divided infringement is not actionable at all unless all of the participants are in a contract or agency relationship that is directed or controlled by a single “mastermind.” Although review of the singe-entity rule was the sole reason for this rehearing en banc, and the sole question briefed by the parties and the amici curiae, this aspect is not resolved by the majority, which simply states that it will not review the law of direct infringement, apparently on the theory that the inducement-only rule renders irrelevant whether there is a single mastermind of the direct infringement.
Neither faction provides a reasonable answer to the en banc questions concerning divided infringement. However, the issues of liability and remedy arising from interactive methods and collaborative performance are readily resolved by application of existing law. Issues of induced infringement are not new, but this aspect is ill served by the majority’s distortion of the inducement statute, 35 U.S.C. § 271(b), and has no support in theory or practice. This new rule simply imposes disruption, uncertainty, and disincentive upon the innovation communities. I respectfully dissent.
Discussion
This en banc court was convened in order to resolve inconsistencies in past panel rulings for situations in which different entities perform separate parts of a patented method. In the two earlier decisions whose rulings were the announced focus of this en banc review, BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed.Cir.2007) and Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed.Cir.2008), panels of this court held that when separate entities perform the *1320 steps of a patented method, there cannot be direct infringement unless a single mastermind directs or controls the performance of all of the steps. These decisions held that since there cannot be direct infringement without such direction or control, there cannot be indirect infringement by inducement or contributory infringement. Thus, the court held that there can be no liability for infringement, although all of the claim steps are performed. BMC Resources, 498 F.3d at 1379; Muniauction, 532 F.3d at 1329. This single-entity rule was applied by the district courts in the Akamai and McKesson decisions that are here on appeal, to deny all liability for infringement. We took these appeals en banc in order to resolve the conflicts within precedent.
The en banc court has been unable to reach consensus. The dissenting opinion authored by Judge Linn adheres to the single-entity rule, and the majority opinion presents the new position that when more than one entity performs the steps of a patented invention, the only liable entity is the inducer, not those who directly infringe the claim. Such an inducement-only rule has never been held, in any case. It has no foundation in statute, or in two centuries of precedent. The en banc majority, embracing this new rule, does not acknowledge the new problems of enforcement and compensation and defense that are also created, the new opportunities for gamesmanship and abuse and inequity. For example, if the direct infringers are not liable for infringement, one wonders whether they are subject to damages or injunction. These and other critical issues should be considered before a new law of inducement-only infringement is adopted.
The majority holds that there is “a duty not to cause the acts that constitute infringement even if the parties who cause the direct injury are not liable.” Maj. op. 1313. I agree that we all have a duty to respect the law, but in the complexities of technology and commerce, one must wonder at the imposition of liability solely for “urg[ing]” or “encouraging],” id. at 1308, while exonerating direct infringers from liability when the patented method is “collectively praetice[d].” Id. at 1309.
The prior laws of infringement effectively handled interactive and collaborative forms of infringement, before either the single-entity rule or the inducement-only rule. Before the law is changed so that only an inducer can be liable for divided infringement, on loose criteria for inducement, this court should at least obtain the advice of those who understand the consequences of this change in infringement law. This unannounced en banc ruling is made without briefing by the parties or notice to the amici curiae.[1]
*1321 I
The En Banc Issue
The only issue for which these cases were taken en banc, the only issue on which briefing was solicited from the parties and amici curiae, was the conflict in precedent arising from the single-entity rule of BMC Resources and Muniauction. The concerned communities had expressed concern with this conflict, but the en banc majority now declines its responsibility, and states that “we have no occasion at this time to revisit any of those principles regarding the law of divided infringement as it applies to liability for direct infringement.” Maj. op. 1307. The majority rejects the single-entity rule only “as a predicate for a finding of indirect infringement.” Id. at 1317. The majority explains that it overrules BMC Resources “in which we held that in order for a party to be liable for induced infringement, some .other single entity must be liable for direct infringement.” Id. at 1306.
Instead, the majority holds that when more than one entity is involved, only the inducer is liable for infringement, although the patent rights are “plainly being violated by the actors’ joint conduct,” and the inducer acts to “encourage[ ]” the infringement. Id. at 1306, 1307-08. The court thus avoids the en banc issue, even as it creates a new liability; yet the court gives no attention to the accompanying new issues such as the measure of damages, or the availability of remedy against direct infringement. While the majority states that it “overrule[s]” BMC Resources, id. at 1306, it is far from clear, for the majority also cites BMC Resources and Muniauction as precedent, id. at 1307 (“[T]his court has rejected claims of liability for direct infringement of method claims in cases in which several parties have collectively committed the acts necessary to constitute direct infringement, but no single party has committed all of the required acts.”), and id. (“To be sure, the court has recognized that direct infringemént applies when the acts of infringement are committed by an agent of the accused infringer or a party acting pursuant to the accused infringer’s direction or control.”). The majority appears to overrule only a single sentence of BMC Resources, at 498 F.3d at 1379: “Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.” The majority also defines.“inducement” as not “direction or control to such an extent that the act of the induced party can be attributed to the inducer as a direct infringer,” maj. op. 1308, and preserves the rulings of Muniauction and Golden Hour Data Systems, Inc. v. emsCharts, Inc., 614 F.3d 1367 (Fed.Cir.2010), and holds that interactive and collaborative infringement is not actionable. The majority’s theory is a spontaneous judicial creation. And it is wrong.
It is apparent that this jurisprudence is in need of correction, clarification, and consistency, for neither the single-entity rule nor the majority’s newly minted inducement-only rule is in accord with the infringement statute, or with any reasonable infringement policy. In contrast, the established law and precedent of 35 U.S.C. § 271 can readily reach and remedy every infringement situation that has been presented.
Cases of divided infringement have not caused past turmoil, as the majority announces. However, turmoil will surely be created, to the detriment of technological advance and its industrial development, for stability and clarity of the law are essential to innovative commerce.
II
The Single-Entity Rule
Questions of divided infringement are not new, but resolution by way of the *1322 single-entity rule is plainly inadequate. The district court remarked in the McKesson case, after applying this court’s rulings in BMC Resources and Muniauction, that the single-entity rule leaves a meritorious patentee without redress:
[T]he single entity rule and BMCs interpretation thereof severely limits the protection provided for patents which would otherwise be valid and enforceable .... As long as the sale of a product constitutes an arms length transaction between the customer and the infringing company, which is insufficient to create vicarious liability, the patent holder would likely have no redress against the infringer. This result weakens the policy of providing protection to those who devote the time and resources to develop otherwise novel and patentable methods.
McKesson Info. Solutions LLC v. Epic Sys. Corp., 2009 WL 2915778, at *7 (N.D.Ga. Sept. 8, 2009).
In McKesson the first step of the multistep claim to an interactive health-care method requires the patient to enter the system — a step held not directed or controlled by contract or agency, whereby the district court stated that it was required to hold that there was not direct infringement, and thus that McKesson’s claim for induced infringement must fail. Had the district court not been constrained by the single-entity rule, the case could easily have been decided on long-standing infringement law.

Direct infringement may be by more than one entity

The court in BMC Resources held that the single-entity rule “derives from the statute itself,” 498 F.3d at 1380, and the defendants herein press this argument. The statute at § 271(a) states the fundamental requirements of patent infringement, and is sometimes called the “direct infringement” provision:
§ 271(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
The word “whoever” in § 271(a) does not support the single-entity rule. By statutory canon the word “whoever” embraces the singular and plural. The first statute in the United States Code, 1 U.S.C. § 1, states that:
§ 1. In determining the meaning of any Act of Congress, unless the context indicates otherwise— words importing the singular include and apply to several persons, parties, or things; ... the words ‘person’ and ‘whoever’ include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals....
This principle was cited in United States v. Oregon & C.R. Co., 164 U.S. 526, 541, 17 S.Ct. 165, 41 L.Ed. 541 (1896) and Barr v. United States, 324 U.S. 83, 91, 65 S.Ct. 522, 89 L.Ed. 765 (1945). The usage “whoever” appears not only in § 271 of Title 35, but in §§ 101, 161, and 171 in referring to inventors without distinguishing between singular and plural. See In re Henriksen, 55 CCPA 1384, 399 F.2d 253, 258 (1968) (1 U.S.C. § 1 applies to Title 35). Neither the defendants nor any amicus has offered any reason to view “whoever” differently in § 271, the patent infringement statute.
Direct infringement requires that every claimed step of a patented method or system is performed in accordance with the limitations stated in the claim. Thus, when more than one entity performs all of the steps, the claim is directly infringed. Until the rulings in BMC Resources and Muniauction, it was not disputed that *1323 when a claimed method is performed without authorization, the claim is infringed. See, e.g., Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) (“If accused matter falls clearly within the claim, infringement is made out and that is the end of it.”); Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (for infringement, every element of the claim must be performed, literally or by an equivalent).
Infringement is not a question of how many people it takes to perform a patented method. The Court observed in Aro Manufacturing Co. v. Convertible Top Replacement Co., 365 U.S. 336, 342, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) that “§ 271(a) of the new Patent Code, which defines ‘infringement,’ left intact the entire body of case law on direct infringement.” As applied to the steps of a claimed process, the law before and after the 1952 Act has been stable. E.g., Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 773 (Fed.Cir.1993) (to infringe a process claim, every claimed step of the process must be performed); Mowry v. Whitney, 81 U.S. 620, 652, 14 Wall. 620, 20 L.Ed. 860 (1871):
The exclusive use of them singly is not secured to him. What is secured is their use when arranged in the process. Unless one of them is employed in making up the process, and as an element of it, the patentee cannot prevent others from using it.
The Court stated in Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 522, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) that “Infringement is defined by 35 U.S.C. § 271 in terms that follow those of § 154.” Section 154, “the keystone provision of the patent code,” id., codifies every patentee’s right to exclude “others” from practicing the patented invention:
§ 154(a)(1) Every patent shall contain a short title of the invention and a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention....
The legislative history of the 1952 Patent Act reflects the linkage between § 154 and § 271, the House Committee Report explaining that § 271(a) was “not actually necessary”:
Section 271, paragraph (a), is a declaration of what constitutes infringement. There is no declaration of what constitutes infringement in the present statute. It is not actually necessary because the granting clause [35 U.S.C. § 154] creates certain exclusive rights and infringement would be any violation of those rights.
H.R.Rep. No. 82-1923, at 9 (1952). The same guidance appears in the Senate Committee Report, S.Rep. No. 82-1979, at 8 (1952), 1952 U.S.C.C.A.N. 2394. Giles S. Rich, a principal contributor to the 1952 Patent Act, summarized that “Paragraph (a) defines direct infringement and is present only for the sake of completeness. We got along without it for 162 years and we could again. Its omission would change nothing.” G.S. Rich, Infringement Under Section 271 of the Patent Act of 1952, 21 Geo. Wash. L.Rev. 521, 537 (1953).
The linkage between § 154 and § 271 finds its mooring in the law as summarized in Professor Robinson’s classic The Law of Useful Inventions (1890) at Section 897:
The nature of the act of infringement is indicated by that of the exclusive right which it invades. Hence an infringement may be committed either by making, using, or selling the patented invention. These words, however, are interpreted as comprehending every method by which the invention can be made available for the benefit of the *1324 infringer, and any person who participates in any wrongful appropriation of the invention becomes thereby a violator of the rights protected by the patent,
(footnote omitted). This court has lost sight of this statutory foundation, although, as the Court explained in Bauer & Cie v. O’Donnell, 229 U.S. 1, 10, 33 S.Ct. 616, 57 L.Ed. 1041 (1913), “Congress did not use technical or occult phrases” in “defining the extent of the rights and privileges secured to a patentee.”

The conflicts in precedent should be resolved

Although the word “whoever” in the infringement statute is not limited to a single-entity, this does not resolve the questions of joint or collaborative or interactive infringement that are raised by this court’s rulings in BMC Resources and Muniauction, and relied on by the district courts in Akamai and McKesson. In BMC Resources this court held that the claims could not be directly infringed, on facts whereby the defendant Paymentech, who provided a computerized system for verifying and paying debit transactions, did not direct or control the performance of separate process steps by the debit networks that routed the transactions to the financial institutions who paid the amounts verified. Although Paymentech administered the system and provided transaction information to the debit networks, the panel observed that it was not shown that “Paymentech also provides instructions or directions regarding the use of those data,” and that there was “no evidence even of a contractual relationship between Paymentech and the financial institutions.” BMC Resources, 498 F.3d at 1381-82. The panel held that because Paymentech did not direct or control the actions of these participating entities, the claims were not directly infringed, and that without direct infringement there could not be induced or contributory infringement by the provider of the claimed method.
In Muniauction this court elaborated on BMC Resources, and explained that direction or control requires more than controlling access to a system or the issuance of instructions for performance of a claim step. The claimed invention was a method of conducting bond auctions over an electronic network, and the patentee Muniauction had argued that direct infringement was met because the defendant Thomson controlled access to the auction system and instructed bidders on participating in the system. At the trial the district court instructed the jury on the law of direct infringement, as follows:
Consider whether the parties are acting jointly or together in relation to the electronic auction process. Are they aware of each other’s existence and interacting with each other in relation to the electronic auction process? Is there one party teaching, instructing, or facilitating the other party’s participation in the electronic auction process? These are the types of questions that you should ask in making your decision on this issue. If you find that there is a sufficient connection between Thomson and the bidders and the issuers that used Thomson’s process, then you could find Thomson liable for direct infringement.
Jury instruction, quoted in Muniauction, 532 F.3d at 1329. The jury found that the claims were infringed, and the district court denied JMOL. On appeal this court criticized the jury instruction, stating that “none of the questions identified by the jury instruction are' relevant to whether Thomson satisfies the ‘control or direction’ standard of BMC Resources.” Id. at 1330. The court held that although Thomson controlled access to its electronic auction system and instructed bidders on its use, *1325 the claimed method could not be directly infringed because Thomson did not direct or control the actions of the bidders.
Applying these principles, the Federal Circuit panel in Akamai elaborated that the requirements of direction or control are not satisfied unless any separate entity involved in direct infringement is acting as the agent of, or by contract with, the mastermind of the entire performance. 629 F.3d 1311 (Fed.Cir.2010). This holding has no support in precedent. In On Demand Machine Corp. v. Ingram Industries, Inc., 442 F.3d 1331, 1344-45 (Fed.Cir.2006), this court approved a jury instruction that summarized precedent as it then existed, as follows:
It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method. Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.
To add to the confusion, some cases declined to follow the single-entity rule, or carved new exceptions. For example, in Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1309 (Fed.Cir.2011) a panel of this court held: “That other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties.” In Centillion Data Systems, LLC v. Qwest Communications International, Inc., 631 F.3d 1279, 1285 (Fed.Cir.2011) a panel of this court held that a claim to a multi-step system could be directly infringed, although the infringer did not perform or direct or control “the back-end processing” of the accused system. In contrast, in Golden Hour, 614 F.3d at 1371, a panel of this court held that there could be no direct infringement, although all of the claim steps were performed by two entities that “formed a strategic partnership, enabled their two programs to work together, and collaborated to sell the two programs as a unit.”
I take note of the Linn cadre’s argument that ingenious patent claim drafting can avoid single-entity problems, and undoubtedly it would help in some situations. I do not discourage ingenuity, but the presence or absence of infringement should not depend on cleverness or luck to satisfy a malleable single-entity rule. The Court in Dawson Chemical Co. v. Rohm & Haas Co., 448 U.S. 176, 188, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980), discussing the law of contributory infringement, cautioned lest “the technicalities of patent law” enable persons “to profit from another’s invention” by performing “acts designed to facilitate infringement by others.”

Lessons from copyright law

Useful guidance has evolved in connection with copyright law, for copyright and patent law are in “closet ] analogy.” Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 439, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). The Court stated in Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) that one “infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it,” citing Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963).
Defendants Limelight and Epic Systems state that vicarious infringement is inapposite in the cases before us, for no one entity performs all steps of the claimed *1326 invention. That theory is incorrect. Both of the defendants agree that agency is a form of attribution, which includes respondeat superior. Restatement (Third) of Agency § 7.07(1) (2006). However, as explained in A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir.2001), “Vicarious copyright liability is an ‘outgrowth’ of respondeat superior,” quoting Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir.1996). Given “the historic kinship between patent law and copyright law,” Sony, 464 U.S. at 439, 104 S.Ct. 774, there is no reason why agency theory attributes the performance of claim steps but the principle of vicarious infringement does not.
The court should simply acknowledge that a broad, all-purpose single-entity requirement is flawed, and restore infringement to its status as occurring when all of the claimed steps are performed, whether by a single entity or more than one entity, whether by direction or control, or jointly, or in collaboration or interaction.
Ill
The Inducement-Only Rule
The majority opinion states that “Direct infringement has not been extended to cases in which multiple independent parties perform the steps of the method claim.” Maj. op. 1307. That is of course incorrect. Despite this challenged statement, the court’s opinion never reaches the issue, although it was extensively briefed by the parties and the many amici curiae. Instead, the majority holds that “[i]t is not necessary for us to resolve that issue today” of “the question whether direct infringement can be found when no single entity performs all of the claimed steps of the patent.” Id. at 1306. The authority cited for “rejecting] claims of liability for direct infringement of method claims in cases in which several parties have collectively committed the acts necessary to constitute direct infringement” is BMC Resources and Muniauction. Id. at 1307. These are the cases that led to convening this en banc court. Thus the majority discards decades of precedent, refuses our en banc responsibility, and states that “we have no occasion at this time to revisit any of those principles regarding the law of divided infringement as it applies to liability for direct infringement.” Id. The apparent justification is the new inducement-only rule of liability.
The court holds that only inducement to infringe is actionable when the claim is practiced by two or more entities, and that there can be no liability for direct infringement. The court holds that “the acts necessary to constitute direct infringement” are different from “the acts specified in the statute [§ 271(a) ],” id. at 1307, 1309, and other new theories. The majority relies on the criminal law principles codified at 18 U.S.C. § 2. However, “[t]he analogy between accomplice liability and contributory infringement fails given careful consideration of the reasons behind imposing criminal sanctions on indirect actors.” M. Bartholomew, Cops, Robbers, and Search Engines: The Questionable Role of Criminal Law in Contributory Infringement Doctrine, 2009 BYU L.Rev. 783, 786. Bartholomew points out at page 807 the differences between accomplice liability and contributory infringement:
As it stands currently, contributory infringement law does not require the strong showings of intent required for accomplice liability in criminal law.... [Wjhile both contributory liability doctrines [e.g., induced and contributory infringement] allow the defendant’s mental state to be inferred through circumstantial evidence, infringement law takes a comparatively generous approach in determining what evidence is probative of knowledge of the underlying illegal act. Most importantly, ac *1327 complice liability places little stock in the actus reus requirement while contributory infringement decisions often hinge on whether the defendant’s actions were ‘material’ enough to justify liability.
The LaFave treatise reiterates that “[c]onsiderable confusion exists as to what the accomplice’s mental state must be in order to hold him accountable for an offense committed by another.” Criminal Law § 13.2, at 712 (5th ed.2010).[2]
The majority opinion states that “the problem presented by the cases before us [is] whether liability should extend to a party who induces the commission of infringing conduct.” Id. at 1307. That is not the problem presented. Liability for inducement is established by statute. The problem before the court is not whether an inducer, properly defined, is liable for infringement; the problem is whether a method patent is infringed when more than one entity performs the claimed steps of the method. Until the BMC line of cases held that the answer is “no” unless there is an agency or contractual relationship among all of the performing entities, this question was resolved by application of the existing laws of infringement, whether direct, induced, or contributory infringement.
In accordance with § 271(c) the entity that provides the system that is used to perform the claimed method, or steps thereof, for which there is no substantial noninfringing use, is liable for contributory infringement — -it is noteworthy that the court’s opinion does not distinguish between induced and contributory infringement, misciting precedent accordingly. The rules of contributory infringement, in which the court seeks support for its elimination of liability for direct infringement, were established to provide liability in situations in which the contributory infringer knows that “the combination for which his component was especially designed was both patented and infringing,” as the Court explained in Aro Manufacturing Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). In Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565 (Fed.Cir.1983) this court ruled that there could be contributory infringement by the provider of the printing plate, when the final step of coating of the plate is performed by the customer.
As summarized in Aro, 377 U.S. at 512, 84 S.Ct. 1526, contributory infringement is “designed for cases where enforcement against direct infringers is impracticable.” (quotation omitted). See also Dawson, 448 U.S. at 188, 100 S.Ct. 2601 (“This protection [of contributory infringement] is of particular importance in situations, like the oil lamp ease itself [Wallace v. Holmes, 29 F. Cas. 74 (No. 17,100) (C.C.D.Conn.1871)], where enforcement against direct infringers would be difficult, and where the technicalities of patent law make it relatively easy to profit from another’s invention without risking a charge of direct infringement.”). The court’s opinion incorrectly treats these cases as “inducement” cases. Inducement is a different concept, and the new breadth with which the court infuses the concept is an unwarranted and unsupported enlargement of the law.

*1328
Liability for inducement requires direct infringement

Precedent establishes the circumstances in which the purveyor of less than the entire claimed invention can be liable for infringement. For all forms of indirect infringement liability, it is necessary to establish that the claimed invention is directly infringed. My colleagues hedge, and while acknowledging that “there can be no indirect infringement without direct infringement,” maj. op. 1308, the court holds that there need not be direct infringers. I need not belabor the quandary of how there can be direct infringement but no direct infringers.
Judge Rich, in Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed.Cir.1990), explained that under common law “[contributory infringement] liability was under a theory of joint tortfeasence, wherein one who intentionally caused, or aided and abetted, the commission of a tort by another was jointly and severally liable with the primary tortfeasor.” The requirement of a “primary tortfeasor” applies to inducement, as has long been understood: “Liability under 35 U.S.C. 271(b) requires the existence of direct infringement by another party which is actionable under 35 U.S.C. 271(a).” C. Miller, Some Views on the Law of Patent Infringement by Inducement, 53 J. Pat. Off. Soc’y 86, 102 (1971). I take note of the majority’s statement that an inducer is not liable for inducing “others to engage in conduct that is not within the claims of the patent in suit.” Maj. op. 1312 n. 4 (citing Shuttlesworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963)). That statement is incomplete, for when the direct infringer is not liable, for whatever reason, the performance of claim steps is not prohibited by law. When the performance of the claim steps is not unlawful, the inducer cannot be liable for inducing infringement, on any theory of tort or criminal or patent law. See Shuttlesworth, 373 U.S. at 265, 83 S.Ct. 1130 (“It is generally recognized that there can be no conviction for aiding and abetting someone to do an innocent act.”).
Precedent routinely reflects that liability for inducement depends on liability for direct infringement. In Mel-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed.Cir.1986) the court held that there was no liability for induced infringement by sale of equipment for use in the patentee’s machine, because the “customers enjoyed an implied license to practice the inventions claimed.” That is, although the customers “practice[d]” the claimed invention, maj. op. 1309, they did not directly infringe, so there could be no inducement of infringement. Cf. Giese v. Pierce Chem. Co., 29 F.Supp.2d 33, 36 (D.Mass.1998) (“If the end users are not infringers due to the protection of the experimental use doctrine, then the defendants Vector and Pierce cannot be liable for contributory infringement or inducement.”).
In NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed.Cir.2005) the court held that there was no liability for inducement by sale of a system that had a component located in Canada, because the customers did not perform all the steps of the claimed method in the United States. That is, although “all the steps of a claimed method [were] performed,” maj. op. 1306, the customers did not directly infringe, so there could be no inducement. Cf. Everpure, Inc. v. Cuno, Inc., 875 F.2d 300, 302 (Fed.Cir.1989) (“[T]here can be neither contributory nor induced infringement when, because of the permissible repair doctrine, there has been no direct infringement.”).
In National Presto Industries, Inc. v. West Bend Co., 76 F.3d 1185 (Fed.Cir.1996) the court held that there was no liability for inducing infringement before *1329 the patent issued, because there is no direct infringement before issuance. The court stated that “if the thing that was abetted was not illegal at the time of abetment, but depended on some future event that might not occur (such as issuance of the patent) liability can not be retroactively imposed.” Id. at 1196; cf. Joy Techs., 6 F.3d at 775 (“If the plant sold by Flakt cannot be used by the purchaser to infringe directly because it will not be operational within the term of the patent, Flakt cannot be guilty on a theory of contributory infringement with respect to that plate.”).
Discarding precedent, the majority holds that there is liability for inducement when the inducer breaches the “duty not to cause the acts that constitute infringement even if the parties who cause the direct injury are not liable.” Maj. op. 1313. Duty, breach, and causation apply in the tort of negligence, not patent infringement. Prosser & Keeton explain that “in negligence cases, the duty is always the same — to conform to the legal standard of reasonable conduct in the light of the apparent risk.” Prosser & Keeton on the Law of Torts, § 53, at 356 (5th ed.1984). In addition to its incorrect treatment of the foundational requirement of direct infringement, the majority creates a new, ill defined, and open-ended theory of liability for patent infringement, simply by “caus[ing], urg[ing], encourag[ing], or aid[ing]” someone to perform separate steps of a patented method. Maj. op. 1308.
To support its unprecedented ruling of induced infringement without direct infringers, the court also misconstrues the 1952 Patent Act and its history. In 1948 then attorney Giles S. Rich testified that “obvious infringement” should be subject to remedy, and that judicial decisions “appear to make it impossible to enforce [combination] patents in the usual case.” Contributory Infringement in Patents: Hearings Before the Subcomm. on Patents, Trade-Marks, and Copyrights of the House Comm, on the Judiciary, 80th Cong. 5 (1948) (statement of G.S. Rich on behalf of the New York Patent Law Association) (“1948 Hearings”). Mr. Rich gave an example of two equal participants in a radio system, sending and receiving, and described: “there is no direct infringer of the patent but only two contributory infringers.” Id. The court today places great weight on this statement. However, a year later Mr. Rich testified again, stating that: “The law always has been that, to hold anyone for contributory infringement, there must have been somewhere a direct infringement which was contributed to.” Contributory Infringement: Hearings on H.R. 3866 Before Subcomm. No. J¡. of the House Comm, on the Judiciary, 81st Cong. 67 (1949) (statement of G.S. Rich) (“1949 Hearings”); id. at 5 (“Somewhere along the line there must be a direct infringement....”).
In the 1951 hearings Mr. Rich again testified, stating that “wherever there is contributory infringement there is somewhere something called direct infringement, and to that direct infringement someone has contributed.” Patent Law Codification and Revision: Hearings on H.R. 3760 Before Subcomm. No. 3 of the House Comm, on the Judiciary, 82nd Cong. 151 (1951) (statement of G.S. Rich). Mr. Rich never proposed the conditions of induced infringement that the court now propounds. Mr. Rich summarized, when the statute was enacted, that “[a]ctive inducement implies that there is not a direct infringement by the one doing the inducing and that the direct infringement was by another.” G.S. Rich, Infringement Under Section 271 of the Patent Act of 1952,-supra at 537.
*1330 The court’s opinion quotes other testimony, none of which proposes or suggests the court’s creative ruling. At the 1948 hearing Representative Kenneth Keating asked “[t]he law of torts is the basic part of patent law, is it not?,” and Mr. Rich answered that: “Infringement is considered to be a tort and contributory infringement is a specific application to patent law of the law of joint tort feasor where two people somehow together create an infringement which neither one of them individually or independently commits.” 1948 Hearings, at 12. At the 1949 hearing Mr. Rich again explained:
When two people combine and infringe a patent in some way or other, they are joint tort feasors, and it so happens that patents are often infringed by people acting in concert, either specifically or by implication, where neither one of them is a direct infringer. The only way you can protect your right is to proceed against someone who is not a direct infringer. That person who does something less than the direct infringement is called a contributory infringer.
1949 Hearings, at 3. The statements and testimony for the 1948 and 1949 hearings, quoted out of context in the court’s opinion, do not state, or hint, that the proposed legislation would accommodate indirect infringement without direct infringers. Nowhere in the entire legislative effort did any supporter or sponsor of the codification of indirect infringement in § 271(b) and (c) refer to “practicing” the claimed invention or “the acts necessary to constitute direct infringement” as liberated from the requirement of proving direct infringement, as the majority does today. Maj. op. 1314-15,1307.

What about remedies?

According to the court’s new ruling, it appears that the patentee cannot sue the direct infringers of the patent, when more than one entity participates in the infringement. The only remedial path is by way of “inducement.” We are not told how compensation is measured. The only thing that is clear, is that remedy is subject to new uncertainties. Since the direct infringers cannot be liable for infringement, they do not appear to be subject to the court’s jurisdiction. Perhaps the inducer can be enjoined — but will that affect the direct infringers? Since the inducer is liable when he breaches the “duty” not to induce, is the inducer subject to multiplication of damages? This return to the “duty to exercise due care to determine whether or not he is infringing” of Underwater Devices Inc. v. Morrison-Knudsen Co., Inc., 717 F.2d 1380, 1389 (Fed.Cir.1983) raises tension with the ruling of the en banc court in In re Seagate Technology LLC, 497 F.3d 1360 (Fed.Cir.2007) that overruled the standard of Underwater Devices.
Nor has the court ascertained the views of the communities affected by this change in law. The many amici curiae explained how the single-entity rule affects their activities; none has had an opportunity to consider the effect of the inducement-only change now adopted en banc.
It is not necessary to change the law in order to design a fair infringement law. The court misconstrues “strict liability” as requiring that every participant in an interactive or collaborative method is fully responsible for the entire harm caused by the infringement. Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. -, 131 S.Ct. 2060, 2065 n. 2, 179 L.Ed.2d 1167 (2011), does not so hold. The tort principle of “strict liability” applies when injury results from inherently hazardous or dangerous activity, not from patent infringement. Black’s Law Dictionary 998 (9th ed.2009) sums up the law:
Liability that does not depend on actual negligence or intent to harm, but that is *1331 based on the breach of an absolute duty to make something safe. Strict liability most often applies either to ultrahazardous activities or in products-liability cases.
Although the term “strict liability” has crept into paténtese, it does not have the consequences given by my colleagues. Proper analysis is illustrated by Blair & Cotter, who point out the inapplicability to patent infringement. Strict Liability and its Alternatives in Patent Law, 17 Berkeley Tech. L.J. 799 (2002). For example, they explain at page 808 that under a true strict liability standard, damages would be recoverable even before the accused infringer has “knowledge or notice that the conduct infringes.” See 35 U.S.C. § 287 (notice requirements).
As stated in Carbice Corp. of America v. American Patents Development Corp., 283 U.S. 27, 33, 51 S.Ct. 334, 75 L.Ed. 819 (1931), “Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee.” When the patent is infringed through the cooperation or interaction of more than one entity, assessment of remedy is appropriately allocated in accordance with traditional tort principles. The Court stated in Burlington Northern & Santa Fe Railway Co. v. United States, 556 U.S. 599, 614, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009) that “apportionment is proper when there is a reasonable basis for determining the contribution of each cause to a single harm” (quotation omitted). These fundamentals apply here, and resolve all of the issues for which both factions of the court disrupt law and precedent.
Remedy for infringement may be apportioned on such traditional tort factors as the relative contribution to the injury to the patentee, the economic benefit received by the tortfeasor, and the knowledge and culpability of the actor. Applicable considerations are summarized in the Restatement of the Law Torts: Apportionment of Liability (2000), as follows:
§ 8. Factors for Assigning Shares of Responsibility
Factors for assigning percentages of responsibility to each person whose legal responsibility has been established include
(a) the nature of the person’s risk-creating conduct, including any awareness or indifference with respect to the risks created by the conduct and any intent with respect to the harm created by the conduct; and
(b) the strength of the causal connection between the person’s risk-creating conduct and the harm.
Comment c to § 8 of the Restatement further elaborates on the factors for assigning shares of responsibility:
c. Factors in assigning shares of responsibility .... The nature of each person’s risk-creating conduct includes such things as how unreasonable the conduct was under the circumstances, the extent to which the conduct failed to meet the applicable legal standard, the circumstances surrounding the conduct, each person’s abilities and disabilities, and each person’s awareness, intent, or indifference with respect to risks. The comparative strength of the causal connection between the conduct and the harm depends on how attenuated the causal connection is, the timing of each person’s conduct in causing the harm, and a comparison of the risks created by the conduct and the actual harm suffered by the plaintiff.
One or more of these factors may be relevant for assigning percentages of responsibility, even though they may not be a necessary element proving a particular claim or defense. However, these factors are irrelevant even to apportionment if there is no causal connection *1332 between the referenced conduct and the plaintiffs injuries. See Comment b. It should be noted that the mental-state factors in this Section may be considered for apportioning responsibility even if they are not themselves causally connected to the plaintiffs injury, as long as the risk-creating conduct to which they refer is causally connected to the injury.
Apportionment of remedy for shared infringement permits consideration of the actual situation, and is particularly suitable in cases of divided infringement. See Birdsell v. Shaliol, 112 U.S. 485, 488, 5 S.Ct. 244, 28 L.Ed. 768 (1884) (“In the case of infringement, the liability of infringers arises out of their own wrongful invasion of his rights.”); Aro, 377 U.S. at 500, 84 S.Ct. 1526 (“[A] contributory infringer is a species of joint-tortfeasor, who is held liable because he has contributed with another to the causing of a single harm to the plaintiff.”).
Whether the infringement is direct or indirect, the allocation of remedy is a case-specific determination. In Grokster, 545 U.S. at 930 n. 9, 125 S.Ct. 2764, the Court observed that “the lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn,” quoting Sony, 464 U.S. at 435 n. 17, 104 S.Ct. 774. Grokster accommodates the realities of today’s technology without departing from the principles of precedent, by identifying when “it is just to hold one individual accountable for the actions of another.” Sony, 464 U.S. at 435, 104 S.Ct. 774. When the several steps of a process claim are performed by more than one entity, whether the entities operate under common direction or control, or jointly or independently or interactively, remedy for infringement is appropriately allocated based on established criteria of culpability, benefit, and the like.
The law has always permitted allocation of remedy when multiple parties are responsible for civil wrongs. The example in Judge Linn’s dissent at pages 1314-15, that the person who provides the nuts, bolts, or gears that hold together an infringing machine would be responsible for full damages for infringement by the machine, does not pass the chuckle test. I must also remark that according to the dissenters’ thesis the manufacturer of the infringing machine would not be liable at all unless the purveyor of the nuts, bolts, or gears is in an agency relationship with a mastermind.
Although Grokster is mentioned in the majority’s opinion, it is undercut by the majority’s insistence that there is no need to establish direct infringement “[bjecause the reasoning of our decision today is not predicated on the doctrine of direct infringement.” Maj. op. 1307. However, in Grokster it was not disputed that the users of the defendants’ systems were liable for direct infringement, and the Court held that the defendants could be liable for inducing the infringement.
When there is combined participation in direct infringement, there is a fair concern for imposing damages on minor participants. Law and precedent do not so require, and experience makes clear that the target is the deep-pocket commercial participant, not the occasional customer. For example, in the McKesson case neither the patient who accesses his medical records, nor the healthcare provider who assembles and provides the records, was sued. Only the licensor of the system software was sued, for the injury to the patentee was in the commercial profit from the license of the software. Neither the single-entity rule nor the inducement-only rule is needed to protect the innocent patient who turns on his computer to access the system containing his medical records.

*1333
Potential for abuse

The majority states that “nothing in the text of either subsection [§ 271(a) or (b) ] suggests that the act of ‘infringement’ required for inducement under section 271(b) must qualify as an act that would make a person liable as an infringer under section 271(a),” maj. op. 1314, and holds that liability for inducement arises simply on “advising].” Id. at 1307. Now that this untenable theory is the law of this en banc court, potential for abuse looms large, for the majority does not require proof of direct infringement, but holds that the entity that advises or enables or recommends the divided infringement is fully responsible for the consequences of the direct infringement.
Many of the amici cmiae pointed to ongoing abuses of the system of patents, and the ensuing disincentive to innovative commerce. The majority ignores these cautions, as it creates new potential problems. And while many innovative industries explained how they may be affected by possible rulings on divided infringement, not one of the many amici suspected the inducement-only theory that is here adopted.
IV
The Two Cases on Appeal
The majority remands for application of the inducement-only rule to the now-vacated panel decisions of Akamai and McKesson. In its remand instructions the majority declines guidance on direct infringement, instead stating at maj. op. 1318: “While we do not hold that Akamai is entitled to prevail on its theory of direct infringement, the evidence could support a judgment in its favor on a theory of induced infringement.” The panels had held that without direct infringement there cannot be induced infringement. That simple rule was confirmed over and over at the hearings leading to the 1952 Patent Act, for the legislative history plainly states the understanding that there must be direct infringement before there can be liability for inducement to infringe.
Brief review of the facts of the cases on appeal demonstrates that these cases are readily decided under the present law, with no need for creative revision of history.

Akamai Technologies, Inc. v. Limelight Networks, Inc., Appeal No.2009-1372, - 1380, -1416, -1417

The district court in Akamai held a full trial, on jury instructions that included the single-entity rule as established in BMC Resources. The jury found infringement, the district court granted JMOL after Muniauction was decided, and a panel of this court affirmed that there could be no infringement, based on failure to meet the single-entity rule. The court today holds that there can be liability, but only for inducement.
The patent at issue, assigned to the Massachusetts Institute of Technology and licensed to Akamai, is entitled “Global Hosting System,” a system for providing content delivery of website information. In brief, the text of a web page is stored on and served from the content provider’s server, and other content such as images, video, and sound, called embedded objects, are stored on the hosting servers of a content delivery network. The defendant Limelight Networks provides such a content delivery system. Claims 19 and 34 of U.S. Patent No. 6,108,703 are representative of the claims asserted at trial, with Limelight providing the service but with the customer conducting the step of tagging of embedded objects (the boldface step):
19. A content delivery service, comprising:
*1334 replicating a set of page objects across a wide area network of content servers managed by a domain other than a content provider domain;
for a given page normally served from the content provider domain, tagging the embedded objects of the page so that requests for the page objects resolve to the domain instead of the content provider domain;
responsive to a request for the given page received at the content provider domain, serving the given page from the content provider domain; and
serving at least one embedded object of the given page from a given content server in the domain instead of from the content provider domain.
34. A content delivery method, comprising:
distributing a set of page objects across a network of content servers managed by a domain other than a content provider domain, wherein the network of content servers are organized into a set of regions;
for a given page normally served from the content provider domain, tagging at least some of the embedded objects of the page so that requests for the objects resolve to the domain instead of the content provider domain;
in response to a client request for an embedded object of the page:
resolving the client request as a function of a location of the client machine making the request and current Internet traffic conditions to identify a given region; and
returning to the client an IP address of a given one of the content servers within the given region that is likely to host the embedded object and that is not overloaded.
The single-entity issue turned on the tagging step performed by the customer. Akamai pursued the charge of direct infringement, recognizing precedent and thus arguing that the single-entity rule is satisfied because the customer tags the embedded objects in accordance with instructions provided by Limelight, within the context of a contractual relationship. The issue of “direction or control” was extensively explored at trial, and the jury was instructed in accordance with BMC Resources:
If Limelight did not direct and control this action, then this substitution cannot be attributed to Limelight. And Limelight cannot, therefore, infringe....
Again, the first [question] again is whether this method of getting to the Defendant content delivery network infringes any claim, and the second question, again, is whether the content provider acted under the direction and control of Limelight. And again, if Limelight directed and controlled this action, it was effectively the action of Limelight, and then it may be found responsible. But if Limelight did not direct and control, both are necessary, the modification at the content provider, then it cannot be deemed to infringe.
So, you should review the evidence, decide how the Limelight systems work, how does the interaction with the content provider work, and, specifically, does Limelight direct and control the modifications or does the content provider carry out these tasks entirely independently. Then compare each of the mechanisms with what is claimed in the certain claims and, specifically, does either of the Defendant’s content delivery methods practice each element of whichever claim you are considering.
Trial Tr. 20:20 to 22:4 (Feb. 28, 2008), J.A. 818-19. The district court further instructed the jury, after discussion with *1335 counsel, that “[i]t is either direct or control, control or direct; it doesn’t have to be both.” Id. at 53:3-5, J.A. 826.
The jury found that Limelight infringed the claims. Limelight moved for judgment as a matter of law, and the district court denied the motion, explaining that “unlike in BMC Resources, here there was evidence that not only was there a contractual relationship between Limelight and its customers, but that it provided those customers with instructions explaining how to utilize its content delivery service.” Akamai Techs., Inc. v. Limelight Networks, Inc., 614 F.Supp.2d 90, 119 (D.Mass.2009).
Two weeks later this court decided Muniauction, and the district court received Limelight’s request for reconsideration on the ground that Muniauction established the additional requirement that direct infringement “requires a showing that the accused direct infringer is vicariously liable for the acts committed by any others required to complete performance of the claimed method,” a more rigorous standard than had been presented to the jury based on BMC Resources. Dkt. No. 377, at 2 (July 25, 2008). The district court found that there was “no material difference between Limelight’s interaction with its customers and that of Thompson [sic] in Muniauction.” Akamai, 614 F.Supp.2d at 122. The district court held that on the law established in Muniauction, the jury verdict of infringement could not be sustained.
The majority now remands for application of its inducement-only rule. However, on the jury instruction that was given, the majority’s criteria for infringement are met. And this endless litigation is further prolonged, for the majority gives no appellate review to the other issues on appeal, including claim construction, the measure of damages, and other decisions of the district court presented for appellate review. They are ignored.

McKesson Technologies Inc. v. Epic Systems Corp., Appeal No.2010-1291

McKesson’s action was for inducement of infringement by Epic Systems, who licenses a software system that is designed for interactive use by healthcare providers and their patients. The patent, entitled “Electronic Provider — Patient Interface System,” is for “a communication system for providing automated, electronic communications between at least one healthcare provider and a plurality of users of the health-care provider.” U.S. Patent No. 6,757,898, abstract. The patent states that “once the patient has logged into his/ her own Web page,” the patient can access a variety of healthcare records and services including “appointment requests and updates, prescription refills, online triage, health search information and the like.” Id. at col.4 11.52-56. Epic has a system called MyChart, and licenses the system software to health-care providers.
The district court applied Muniauction, and granted summary judgment that the patent cannot be directly infringed, and thus that there cannot be inducement to infringe. The district court held that because the patient performs some steps of the claim, direct infringement is precluded because neither the healthcare provider nor the provider of the overall system directs or controls the actions of the patient. Application of the majority’s theory of inducement could help to clarify today’s rulings, with their uncertainties and contradictions.
As claimed in the '898 patent, the patient initiates a communication as the first step of the method, which includes interactive steps:
1. A method of automatically and electronically communicating between at least one health-care provider and a plurality of users serviced by the health *1336 care provider, said method comprising the steps of:
initiating a communication by one of the plurality of users to the provider for information, wherein the provider has established a preexisting medical record for each user;
enabling communication by transporting the communication through a prOvider/patient interface over an electronic communication network to a Web site which is unique to the provider, whereupon the communication is automatically reformatted and processed or stored on a central server, said Web site supported by or in communication with the central server through a provider-patient interface service center;
electronically comparing content of the communication with mapped content, which has been previously provided by the provider to the central server, to formulate a response as a static or dynamic object, or a combined static and dynamic object; and
returning the response to the communication automatically to the user’s computer, whereupon the response is read by the user or stored on the user’s computers
said provider/patient interface providing a fully automated mechanism for generating a personalized page or area within the provider’s Web site for each user serviced by the provider; and
said patient-provider-interface service center for dynamically assembling and delivering custom content to said user.
McKesson charged Epic with inducing infringement of the '898 patent. Epic argued in defense that in accordance with BMC Resources the claims cannot be directly infringed because no single entity performs or directs or controls every step of the claimed method. McKesson responded that the requirements of BMC Resources are met, in that the healthcare provider controls the patient’s access to the MyChart system, for the healthcare provider requires the user to accept a “cookie” in order to use the system and the system requires login information to restrict the user’s access to information.
The district court at first denied summary judgment, finding genuine issues of material fact as to the question of direction or control. This court then decided Muniauction, and the district court concluded that summary judgment of noninfringement was “competed].” McKesson, 2009 WL 2915778, at *5. The district court drew analogy to the facts and result in Muniauction to conclude that there could not be direct infringement as a matter of law. The majority is silent on the provisions embodied in Muniauction, although the district court held them to be controlling.
Conclusion
The issues that were presented for en banc review can be simply resolved on the present law. The court should acknowledge that an all-purpose single-entity requirement is flawed, and restore direct infringement to its status as occurring when all of the claimed steps are conducted, whether by a single entity or in interaction or collaboration. Remedy is then allocated as appropriate to the particular case, whether for direct or induced or contributory infringement, in accordance with statute and the experience of precedent.
The court has fractured into two flawed positions, each a departure from established precedent, each poorly suited to the issues and technologies that dominate today’s commerce. Today’s new rule of inducement-only liability serves no public interest, no innovation need. The consequences for the technology communities are uncertainty, disincentive, and new potential for abuse.

. Briefs amicus curiae were filed by Altera Corp., HTC Corp., HTC America, Inc., and Weatherford International; American Intellectual Property Law Association; Aristocrat Technologies Australia Pty Ltd. and Aristocrat Technologies, Inc.; Apple Inc.; Biotechnology Industry Organization; Boston Patent Law Association; CTIA — The Wireless Association and MetroPCS Wireless, Inc.; Cascades Ventures, Inc. and VNS Corp.; Cisco Systems, Inc., Dell, Inc., eBay Inc., Google Inc., Hewlett-Packard Co., Intel Corp., Intuit, Inc., Micron Technology, Inc., NetApp, Inc., RingCentral, Inc., SAP America, Inc., Symantec Corp., Yahoo, Inc., and Zynga Inc.; Conejo Vally Bar Association; Electronic Frontier Foundation; Encore Wire Corp.; Facebook, Inc. and Linkedln Corp.; Internet Retailers; Myriad Genetics, Inc.; New York Intellectual Property Law Association; Pharmaceutical Research and Manufacturers of America; Shuffle Master, Inc.; The Financial Services Roundtable; San Diego Intellectual Property Law Association, The Foundry Group, First Round Capital, and Kedrosky Capital; Thomson Reuters Corp.; and Washington State Patent Law Association.

. The majority also defends its adventure into uncharted infringement law, by reciting other assorted special statutes, such as the HatchWaxman Act’s artificial infringement provision for challenge to a patent when there is no case or controversy because there is no infringement, in order to enable generic drug producers to test the patent while prohibited from making or selling the patented product. § 271(e)(2). This special expedient does not justify this court's creation of a new law of infringement.